JOY A. SAN BUENAVENTURA
Attorney at Law, A Law Corporation
101 Aupuni St., Suite 311
Hilo, HI 96720
Telephone: (808) 961-2131

Attorney for Intervenors

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ALLSTATE INSURANCE,<br><br>                  Plaintiff,<br><br>        vs.<br><br>MARK DANIEL DAVIS, et al.<br><br>                 Defendants. | CIVIL NO. 04-CV-418<br><br>DECLARATION OF HAROLD V. HALL; EXHIBIT "A"; CERTIFICATE OF SERVICE.<br><br>Hearing:  March 28, 2006<br>Time:      9:30 a.m.<br>Judge:   Hnr. Alan C. Kay |

**DECLARATION OF HAROLD V. HALL, PH. D.**

1. I am Harold V. Hall, PhD, ABPP, a licensed psychologist and board certified in 3 specialties – clinical psychology, forensic psychology, and neuropsychology -- and current director of the Pacific Institute for the Study of Psychology.  Attached as Exhibit A is a true and correct copy of my curriculum vitae.

2. I have been hired to review the police report in the underlying case, the complete school records of Mark Davis, Jr. and his deposition.

Although there are more documents and interviews that still need to be provided for me to offer final conclusions in the underlying *Tadeo v. Davis, et al.*,[1] case CIVIL No. 03-1-0260, , I am able to offer some following preliminary conclusions.  No mental diagnoses or person-specific conclusions will be proffered in this declaration other than conclusions regarding dangerousness, as I have not to date personally interviewed any relevant person. Conclusions regarding the dangerousness of a person can and have been made in the absence of interviewing a person if the database upon which the conclusions regarding violence risk are proffered is sufficiently comprehensive (see reviews by Hall, H., 1987, Violence Prediction.  Guidelines for the Forensic Practitioner, Springfield, Ill:  C. C. Thomas; also second edition  by Hall, H. and Ebert, 2001; Quinsey, V., Harris, G., Rice, M., & Cormier, C., 1998, Violent Offenders:  Appraising and Managing Risk.  Washington, D.C:  American Psychological Association).  In regards to conclusions regarding parents' forseeability of dangerousness on the part of their child, the preliminary conclusions offered are presented in the hypothetical and

---

[1] *Tadeo, et al. v. Davis, et al.* filed in the Circuit Court of the Third Circuit, State of Hawaii as Civil No. 03-1-0260

assume that information in the police report and his deposition are, in fact true.

3. Virtually all parents who live in close proximity to their children, including those parents who have substantial deficiencies, are able to observe and anticipate the imitative behaviors of their offspring. Much of the learning of a child comes directly from the observation and imitation of the parents' behavior gained from frequent contact and reward and punishment for different responses. Indeed, a strong behavioral science literature suggests that modeling of behavior by the parents is one of the powerful learning influences in a child's life.

4. Children who are exposed to sexual abuse are at higher risk to perpetrate this behavior on another child. Children who are mentally retarded and have been so exposed have less cognitive flexibility and restraint as well as learning experiences where sexual abuse was acceptable and thus are at higher risk to perpetrate sexual abuse on another child.

5. A parents' actions impact on a child; and thus, if a parent exposes the child to pornography, especially violent pornography, then a parent should have foreseen sexual violence by their child on another child.

6. From my review of the School records, it appears that Mark Davis, who was born on August 12, 1987, attended the Detroit Public School system from the October 8, 1992 to June 15, 1999; and at the Detroit Public School system, the records were significant for the following:

    a. 3/31/94    Referral for School Social Work Service because "Mark lacks self-control. Mark has a slight tendency to be destructive to property of classmates and or school property to receive attention. Mark constantly defies authority." Ellen Pearl Davis refused the referral for School Social Work Service.

    b. 8/12/94    " Slight tendency to be destructive to school and classmates property to receive attention" Mark constantly defies authority.

    c. 10/29/97    Evaluation Summary Report by School Psychologist where "Mrs. Davis could not remember any significant speech delays or problems even though Mark is currently receiving speech and language services for a severe impairment…Teacher report describes Mark as having severe deficits in all areas of work. His behavior is also considered a

great concern as he has been suspended several times this school year without any great improvement."

d. 3/31/99      Request for Special Ed Supervisory Services: Emotionally impaired and eligible for special ed services.  Least restrictive environment consideration:  "self-contained room with disabled"

e. 3/31/99      Annual Goals include: "Reduce verbally/physically aggressive behavior towards peers and adults," and "reduce non-compliant behavior."

f. 4/14/99      write-up for insubordination; verbally abusive

7.  The Pahoa Elementary School records, from fall 1999 to Spring, 2001 show the following:

a. 1/5/01  WISC testing:  Significant Maladaptive Behavior.

b. 1/16/01  D. Pranke observed Mark out-of-sight outside Michelle Chow's class, harassed the "CPO's".

c.  1/26/01  complaint of harassment that is "pervasive and continuous" from girls – 6th grade

d. 2/7/01  Mark admitted to physical confrontation

e.  2/23/01  Mark pushed Keoni on chest.

f. 2/27/01  Mark made sexual facial & eye gestures at Scarlett Johnson

g. 2/28/01  Mark called Rabang a "fucking Filipino"

h. 2/28/01  Mark was where he wasn't suppose to be.

i. 3/5/01  Mark snapped rubber band at Jackson

j. 3/9/01  Mark didn't listen to teacher- going down stairs; going across street

8. The police report show the following:

a. Joanne Kaawaloa, a substitute teacher at Pahoa Elementary School, stated: Mark would sexually harass a female student named Latonia and Latonia hated school because of this; Mark bullied other students; Mark would pick fights; and Mark was "violent and he did not like authority."

b. 2000 – Tracy Gonsalves came upon Mark Davis, Jr. "punching out" her son with Neal Davis watching.  Mark Davis "did get violent at times."

c. Davis neighbors Gary Gram and James Brown, stated that Mark Davis, Jr. is a bully with smaller kids, would brag about braking into homes and bragged about "several girls lined up who want to 'do him'."

d. Children that Mark Davis, Jr. would play with were interviewed: Ioelu (7 years old) and his sister, Felolini, said that Mark would tease Felolini and make gestures with his shirt off "with his index fingers and thumbs, he would go to his nipples and mimic pinching them, (h)e would bring his hands up to his mouth." Ioelu did not understand the gesture but it would make Felolini very uncomfortable.

e. Davis' neighbor Aaron Johnson and Davis tenants, Martin John Daigle and Ed Fiddes, discussed Mark Davis, Sr.'s solicitations for sex, numerosity of guns, marijuana and "ice" availability in the Davis home and heavy internet use in one room by the entire Davis family.  Further, Martin John Daigle witnessed

Mark Sr. talk about sex to Mark Jr. and said "I'd like to get that little girl" to Mark, Jr..  Daigle stated that all the children were very aware of what sex is about at a very young age.

f.  May, 2001 – Amber Dixson stated that Mark Davis Jr. would "make gestures like holding onto his crotch in front of them (referring to she and her girlfriend)."

g.  9/27/01    The morning of the incident, Mark Davis, Jr. and Malaki kicked each other in front of a school crossing guard.

h.  9/27/01    When Mark Davis, Sr. was interviewed, he stated that neither he nor his wife were at home until 4:00-4:30 p.m. on the day of the incident.

i.  10/13/01    Mark Davis, Sr. stated that he was told that Mark Davis, Jr. was "smoothing" meth on the date of the incident.

j.  10/15/01    result of search warrant on Davis home revealed 4 pornographic videos.

k.  11/01 Search warrant results on video rentals stores show at least 19 different video pornographic rentals with several being

rented more than once and as often as four times since March, 2001.

    l.  Mark Davis Sr. and Ellen Pearl Davis were arrested because upon execution of the search warrant marijuana was found on the residence.

9.  Where parents are aware that their child has a pattern of continual and escalating of violence over the years, indicia of enjoying some of the outcomes of violence and even the process of intimidating others, associated with deception and attempts to escape the consequences of the violent acts, coupled with other antisocial behavior such as theft and drug taking, then such parents are likely negligent in not supervising their child both over the years and at a particular point of time such as a violent incident perpetrated by the child.

It is incorrect and contrary to the finding of the behavioral science research to say that such violence, given the above was unpredictable. It is likewise an invalid argument to separate the child's aggression from its parental origins, contributions and exposure.

10.  Parents who refuse to cooperate with agencies and authorities in controlling their child's maladaptive behavior, including chronic

aggression and drug taking, and expose their child to the same are likely contributing to the child's problem and virtually guarantee that well meaning and otherwise effective intervention by those agencies and authorities will fail.

Further, drug taking by a mentally retarded person will likely compromise further his or her reduced intellectual skills and self-control both at the time of intoxication eventually during non-drug taking states.

11.  Preliminary conclusions are as follows: (1) If the characteristics/behaviors of a child and his parents described above both from the findings from the behavioral science literature and from historical information apply to the instant case, then a strong prima facie case, from a psychological perspective, has been established.  (2) The history of Mark Davis, Jr., consisting of a multiplicity of acts involving violence to his peers, threats of violence and intimidation, drug taking and other factors and events, is sufficient on a preliminary basis for others to have anticipated the instant violence, as well as to predict or at least anticipate that future violence will occur, most likely of the same type and quality as that exhibited in the past.  It is

an invalid argument to describe the instant violence as unpredictable, given his history and other circumstances and events; (3) Insufficient data exists at this time to explain or predict the violence-related and other maladaptive behavior of the parents.  It is an invalid argument, however, to state that any parents who observe and live with their child in close quarters for a substantial length of time can not anticipate the violence-related behavior of their offspring, especially if their child meets the descriptors presented in #1 above.  (3) On a preliminary basis, given #1 and #2 above, any parent would have a duty to prevent violence from their child over the years of their contact with him or her, and at any particular temporal point in time.

12.  I attest that the foregoing is a true and correct synopsis of my opinions to date.

DATED: Hilo, Hawaii, __3\13\06__ .

HAROLD V. HALL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 13, 2006, a true and correct copy of the foregoing was duly served upon the following by delivering in the following manner at their last known address:

**Served Electronically by CM/ECF**

Richard B. Miller    rmiller@tmp-hawaii.com   on March 13, 2006

Keith K. Hiraoka    khiraoka@rlhlaw.com            on March 13, 2006.

**Served by U.S. Mail**

Ellen Pearl Davis, PO Box 38754, Detroit, MI 48238 on March 13, 2006

DATED:  Hilo, Hawaii, March 13, 2006.

/s/ Joy A. San Buenaventura
JOY A. SAN BUENAVENTURA

DATED:  Hilo, Hawaii, _____.

_____
HAROLD V. HALL