TOM PETRUS & MILLER, LLLC

RICHARD B. MILLER          3729-0
rmiller@tpm-hawaii.com
Telephone: (808) 792-5855
PATRICIA KEHAU WALL     3498-0
kwall@tpm-hawaii.com
Telephone: (808) 792-5823
Finance Factors Center
1164 Bishop Street, Suite 650
Honolulu, Hawaii  96813
Telephone: (808) 792-5800

Attorneys for Plaintiff
ALLSTATE INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, an Illinois corporation<br><br>Plaintiff,<br><br>vs.<br><br>MARK DANIEL DAVIS; ELLEN PEARL DAVIS; and MARK DAVIS, JR., a minor,<br><br>Defendants. | CIVIL NO.  04-00418 ACK/BMK<br>(Declaratory Judgment)<br><br>PLAINTIFF ALLSTATE INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE<br><br><u>Hearing:</u><br>Date:    March 28, 2006<br>Time:   9:30 a.m.<br>Judge:  Hon. Alan C. Kay<br><br>Trial date:  None |

**PLAINTIFF ALLSTATE INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I. INTRODUCTION

Neither Defendant Mark Davis, Jr. ("Defendant") nor Intervenors George and Tumata Tadeo ("Intervenors") have pointed to a genuine issue of *material* fact regarding the existence of coverage under the subject homeowner's insurance policy.

The simple fact is that the complaint in the Underlying Lawsuit describes an intentional criminal assault by Defendant resulting in the death of the Intervenors' daughter, Kau`ilani Tiarau Lucas-Tadeo ("Kau`ilani"). Under the language of the subject policy and Hawaii law, it is completely irrelevant whether Defendant acted with the subjective intent to harm Kau`ilani. It is likewise irrelevant that Defendant was acquitted by reason of a mental disease, disorder or defect. All that matters is that the Defendant's acts – as alleged in the pleadings in the Underlying Lawsuit – were intentional, and that bodily injury would reasonably be expected to result from those acts. Because the claims arising from this tragedy do not result from an "occurrence" within the meaning of the subject homeowner's insurance policy, and because coverage is precluded by the Policy's exclusion for bodily injury "intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, *any* insured person[,]" Allstate has no

duty to defend or indemnify Defendant or his parents for the claims arising from the alleged assault.

II.   ARGUMENT

   A.   Allstate Has Not Breached a "Duty to Investigate"

Intervenors erroneously assert that Allstate is somehow estopped from disclaiming coverage because it has not conducted an "investigation" beyond the pleadings in the Underlying Lawsuit to determine whether there is any potential for coverage under the subject Homeowner's policy. The duty to investigate a claim relates to an insurer's contractual obligation to defend its insured against potentially covered claims. See Dairy Road Partners, Inc. v. Island Ins. Co., Ltd., 92 Haw. 398, 992 P.2d 93 (Haw. 2000) (where the insured tenders his or her defense in a lawsuit in which the complaint does not clearly and unambiguously assert a covered claim, the insurer, as a precondition to refusing the tender on the ground that there is no possibility of coverage, must nevertheless conduct a reasonable investigation to ensure that the facts of the case do not obligate it to defend the insured). In this case, Allstate has not refused Defendant's tender. To the contrary, Allstate has provided its insureds with a defense pursuant to a reservation of rights while simultaneously petitioning this Court for a declaratory

judgment that there is no potential for coverage under the Policy for the claims asserted in the Underlying Lawsuit.[1]

Intervenors' reliance on Bayudan v. Tradewind Ins. Co., Ltd., 87 Haw. 379, 957 P.2d 1061 (Haw.App. 1998) is misplaced. In Bayudan, the Hawaii Intermediate Court of Appeals ("ICA") held that a liability insurer must investigate beyond a third-party claimant's pleadings when (1) the allegations in the pleadings should alert the insurer that there is a potential for coverage; (2) the allegations differ from facts the insurer knows or can readily ascertain; or (3) the allegations in the pleadings are ambiguous. Bayudan, 87 Haw. at 380, 957 P.2d at 1062. None of these circumstances exists in this case.

First, the Complaint in the Underlying Lawsuit unambiguously alleges that Defendant *assaulted* Kau`ilani, inflicting serious head injuries that resulted in her death. Intervenors' allegation that Defendant acted "negligently, recklessly and/or intentionally" in assaulting Kau`ilani does not create a potential for coverage. See Bayudan, 87 Haw. at 387, 957 P.2d at 1069 (when both negligent and intentional torts are alleged in a complaint, allegations of negligence do not necessarily invoke the duties of the insurer to defend; where factual allegations in the complaint

---

[1] Even if Allstate *had* refused Defendants' tender, Intervenors would have no standing to complain about the refusal, as the duty to defend is purely contractual, and Intervenors are not parties to the subject insurance contract.

4

unquestionably implicate the intentional acts exclusion of the insurance policy, an insurer has no duty to defend or indemnify its insured).

There are no allegations in the complaint that would support a negligence claim against Defendant. Rather, all of the claims against Defendant arise from his sexual assault on and killing of Kau`ilani, for which coverage is unambiguously excluded under the Policy. Further, as discussed more fully below, the Policy affords no coverage for the Intervenors' claim of negligent supervision against Defendant's parents, because the Policy precludes coverage for *all* insureds thereunder where a claim arises from any one insured's intentional or criminal acts.[2] There are thus no allegations in the Intervenors' complaint that would alert Allstate to a potential for coverage under the Policy.

Second, the facts alleged in the Intervenors' complaint do not differ from those known to or readily ascertainable by the insurer. The complaint alleges that Defendant assaulted Kau`ilani, causing her death. These allegations are consistent with the information known to or readily ascertainable by Allstate, e.g., from the record in the criminal case against Defendant.

---

[2]On August 24, 2005, the Court granted Allstate's motion for default judgment against Defendants Mark Daniel Davis and Ellen Pearl Davis. Accordingly, the only claim remaining for adjudication in this declaratory relief action is Allstate's claim for declaratory judgment against Mark. Thus, Allstate submits that the question of coverage for the Intervenors' negligent supervision

Third, the allegations in the Intervenors' complaint are not ambiguous. The facts alleged therein clearly describe an *intentional* assault by Defendant, regardless of the legal label Intervenors seek to affix to their claim.

B.  Defendant's Subjective Intent is Irrelevant

Both Defendant and Intervenor mistakenly assert that because the Intervenors allege that Defendant "negligently, recklessly and/or intentionally" assaulted Kau`ilani, a potential for coverage exists under the Policy. However, as discussed above, Intervenors cannot manufacture coverage by affixing a "negligence" label to a claim based on inherently *intentional* conduct. Assault is an inherently *intentional* tort. See Bayudan, supra.

Moreover, under Hawaii law, the question of whether an injury arises from an accident, or "occurrence," or is such as would be reasonably expected by the insured is determined *objectively*, from the standpoint of a reasonable person. Hawaiian Ins. & Guar. Co., Ltd. v. Blanco, 72 Haw. 9, 16, 804 P.2d 876, 880 (Haw. 1991) (where insured fired rifle in direction of victim with the intent of frightening him, and bullet struck victim causing physical injury, such injury was something that a reasonable person should have anticipated and expected and was thus not accidental); (overruled in part on other grounds, Dairy Road Partners,

---

claim is moot. However, out of an abundance of caution, Allstate nonetheless addresses the issue herein.

supra, 92 Haw. 398, 992 P.2d 93, (2000); Hawaiian Ins. & Guar. Co.. Ltd. v. Brooks, 67 Haw. 285, 290-91, 686 P.2d 23, 27-28 (Haw. 1984) (rejecting claim for defense by the driver of an insured automobile, despite his assertion that he did not "intend" or "expect" the rape of a passenger by another passenger in his vehicle's back seat) (overruled in part on other grounds, Dairy Road Partners, supra).

Nor does the assertion that Defendant suffers from mental illness transform his assault against Kau`ilani` into an accident. See Allstate Ins. Cov. v. Prasad, 39 F.3d 1164 (11th Cir. 1994) (stabbing by allegedly insane person was not an "accidental loss" within meaning of homeowner's insurance policy).

Both Defendant and Intervenors simply ignore the unambiguous language of Allstate's intentional and criminal acts exclusions, which preclude coverage for intentional torts <u>regardless of the insured's mental capacity</u> or lack thereof:

> *Losses We Do Not Cover Under Coverage X:*
>
> 1.  **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
>     a)  such insured person lacks the mental capacity to govern his or her conduct;
>
>     b)  such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

7

>    c)   such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

Courts construing identical or similar exclusions have held that an insured's alleged mental illness or insanity has *no bearing* on the existence of coverage. See, e.g., Cary v. Allstate Ins. Co., 922 P.2d 1335 (Wash. 1996) (where insurance policy excluded bodily injury arising from insured's criminal acts, or acts of a criminal nature, even if the insured person lacked the mental capacity to appreciate the wrongfulness of his acts or conform his conduct to the requirements of the law, there was no coverage under policy for fatal stabbing by insured who was acquitted of crime by reason of insanity); Allstate Ins. Co. v. Burrough, 914 F.Supp. 308 (W.D.Ark. 1996) (criminal acts exclusion of homeowners' insurance policy applied to act of insured minor in furnishing juvenile with handgun involved in accidental shooting; exclusion applied whether or not insured was actually charged with crime and even if insured lacked mental capacity to govern conduct, and it thus applied so long as insured engaged in conduct described as criminal in penal code); Kimble ex rel. Dedon v. Allstate Ins. Co., 710 So.2d 1146 (La.App. 1996) (liability coverage for fatal shooting by insane insured was barred by intentional injury exclusion of homeowners' insurance policy, whether or not insured could form

intent to injure; exclusion applied even if insured lacked mental capacity to govern his or her conduct).

Intervenors clearly allege criminal conduct by Defendant, i.e., an unlawful assault on Kau`ilani resulting in her death. Defendant's subjective intent, or his capacity to form such intent, is irrelevant. Thus, coverage for the claims arising from Kau`ilani's death is excluded under the Policy. None of the cases cited by Intervenors in this regard contains an intentional acts or criminal acts exclusion identical or similar to those at issue in the instant case, i.e., one providing that the exclusion applies regardless of an insured's mental capacity. See, e.g., Preferred Risk v. Saboda, 489 So.2d 768 (Fla.Dist.Ct.App. 1986) (opinion generally references intentional acts exclusion but does not quote from policy); State Farm Fire & Cas. Co. v. Morgan, 368 S.E.2d 509 (Ga. 1988) (same); Rajspic v. Nationwide Mut. Ins. Co., 718 P.2d 1167 (Idaho 1986) (exclusion for injuries "caused intentionally by or at the direction of the insured"); Preston v. Granger, 517 So.2d 1125 (La.App. 1987) (excluding coverage for bodily injury expected or intended by the insured).

Additionally, the courts in each of the cases cited by Intervenors adopted a *subjective* test for intent, i.e., one that focuses on whether the insured subjectively intended the harm resulting from his or her acts. As discussed above, Hawaii

9

courts apply an <u>objective</u> test, i.e., one focusing on the reasonably foreseeable consequences of an insured's acts.

Intervenors' assertion that their claim for negligent infliction of emotional distress is covered under the Policy because Defendant may not have subjectively intended to cause the Tadeos' emotional harm is likewise without merit. It was clearly foreseeable, from the standpoint of a reasonable insured, that a fatal assault on the Tadeos' minor child would cause them emotional harm. Again, Defendant's subjective intent is irrelevant.

Likewise, the fact that Mark was not convicted does not bring the Tadeos' claims within the coverage of the Policy. The claims asserted in the Underlying Action – and not the insured's guilt or innocence – control whether coverage is triggered under the Policy. See <u>Bayudan</u>, 87 Haw. at 390-91, 957 P.2d at 1072-73 (insured's contention that he did not kidnap and rape plaintiff did not bring alleged victim's claims within scope of coverage). <u>See</u> also <u>Allstate v. Kim</u>, 121 F. Supp. 2d 1301, 1305 (D. Hawaii 2000) (the underlying pleadings-- and not the insured's acquittal on criminal charges-- are dispositive of the insurer's coverage obligation); <u>Pancakes of Hawaii, Inc. v. Pomare Properties</u>, 85 Haw. 286, 291, 944 P.2d 83, 188 (Haw. App. 1997) ("'Where *pleadings* fail to allege any basis for recovery

within the coverage clause, the insurer has no obligation to defend") (emphasis added).[3]

### C. There is No Coverage for the Claims Against Mr. and Mrs. Davis

As noted earlier, this Court has already granted Allstate's Motion for Default Judgment Against Defendants' parents, Mark Daniel Davis and Ellen Pearl Davis. Despite this, Intervenors erroneously assert that coverage exists under the Policy for their claims of negligent supervision and vicarious liability against. However, this assertion is simply wrong as a matter of law.

As an initial matter, the alleged failure of Mr. and Mrs. Davis to properly supervise Defendant does not constitute an "occurrence" within the meaning of the Policy. See Fire Ins. Exch. v. Cornell, 90 P.3d 978, 980 (Nev. 2004) (named insureds' failure to prevent their son from committing statutory rape was not an "occurrence" within meaning of homeowner's insurance policy); Farmers Alliance Mut. Ins. Co. v. Salazar, 77 F.3d 1291 (10th Cir. 1996) (insured's 16-year-old son's intentional murder of another boy was not "occurrence" within homeowners'

---

[3]Defendant's objections regarding the admissibility of Plaintiff's Exhibit 3, the Judgment of Acquittal of Defendant by reason of mental disease or defect, are immaterial, as evidence of such acquittal, or, indeed, of the charges filed against Defendant, is not essential to Allstate's claim for declaratory relief. The Policy's exclusion for intentional and criminal acts applies regardless of whether an insured is actually charged with or convicted of a crime.

policy, and thus could not trigger liability coverage for mother for negligent supervision of son).

Moreover, because the Policy excludes coverage for losses caused by the intentional or criminal acts of "any insured," Defendant's intentional acts resulting in the death of Kau'ilani preclude coverage for his parents as well. See, e.g., Allstate Ins. Co. v. Jordan, 16 S.W.3d 777 (Tenn. App. 1999) (exclusion for intentional or criminal acts of "*an* insured" precluded coverage for claims of negligent supervision against parents of minor who shot pizza delivery person); Caroff v. Farmers Ins. Co. of Washington, 989 P.2d 1233, 1237 (Wash.App. 1999) (parents of teenager who sexually molested three-year-old child were not entitled to coverage for child's injuries under umbrella and homeowners insurance policies that specifically excluded coverage for injuries caused by or arising out of the actual, alleged, or threatened molestation of a child by "any insured," even though severability clauses provided that coverage applied separately to each insured); Glover v. Allstate Ins. Co., 493 S.E.2d 612, 615 (Ga. App. 1997) (exclusion in homeowners policy for criminal act of insured barred coverage for claims against minor *and* his parents arising from shooting by minor); Canutillo Independent School Dist. v. National Union Fire Ins. Co. of Pittsburgh, 99 F.3d 695, 704-705 (5th Cir. 1996) (where a claim against an insured would not exist "but for" conduct explicitly excluded by the policy, the dependent claims are also not covered under

the policy); Allstate Ins. Co. v. Steele, 74 F.3d 878, 881 (8th Cir. 1996) (exclusion for damages "resulting from" the intentional act of *an* insured person precludes coverage for any insured for same damages, regardless of effect of "joint obligations" provision).

Intervenors' argument that Hawaii's parental vicarious liability statute, Haw. Rev. Stat. § 577-3, somehow gives rise to coverage in a case such as this is also without merit. As this Court held in Allstate Ins. Co. v. Kim, 121 F.Supp.2d 1301 (D.Haw. 2000), another case involving claims for negligent supervision and vicarious liability against the parents of a minor alleged to have committed an assault, an exclusion for injuries arising from the intentional or criminal acts of *an*, i.e., *any*, insured also precludes coverage for claims of vicarious liability against the offending insured's parents pursuant to Haw. Rev. Stat. § 577-3.

      D.     There is No Basis for the Court to Refrain from Exercising its Jurisdiction or Stay the Instant Action

Defendant asserts that the Court should decline to exercise jurisdiction over this action pursuant to Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998). However, as the Court in Dizol noted, "there is ***no presumption in favor of abstention*** in declaratory actions generally, nor in insurance coverage cases specifically." Id. at 1225. The Dizol Court held that the question of whether a district court should retain jurisdiction over a DJA involving

13

insurance coverage issues should be based on the factors enumerated by the Supreme Court in Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942). Thus, a district court should avoid needless determination of state law issues and discourage litigants from filing declaratory actions as a means of forum shopping and avoid duplicative litigation. There is also a presumption against the exercise of jurisdiction if there is a prior parallel state proceeding involving the *same issues* and parties as the DJA.

The instant case will not involve the needless determination of state law issues. The Policy language at issue herein – in particular Allstate's intentional and criminal acts exclusions – is unambiguous and has been previously addressed by a number of courts, including this one in Allstate v. Kim, supra. Neither Defendant nor Intervenors have cited to any authority adopting a contrary interpretation of the relevant policy language. Nor has there been any "forum shopping" by Allstate. Finally, there is no likelihood of duplicative litigation. There is no issue in the Underlying Lawsuit that will be determinative of coverage in this action, i.e., regardless of the theory of liability upon which Intervenors may prevail, the facts alleged in their complaint, i.e., Defendant's intentional assault against Kau`ilani, preclude coverage.

There is also no basis for staying this action pursuant to State Farm Fire & Cas. Co. v. Poomaihealani, 667 F.Supp. 705 (D.Haw. 1987), which involved a

claim by an insured that he acted in self defense. There is no claim herein that Defendant acted in "self defense" when he fatally assaulted a 6-year-old girl.

III. <u>CONCLUSION</u>

For all the foregoing reasons, Allstate respectfully requests that the Court GRANT its Motion for Summary Judgment.

DATED:   Honolulu, Hawaii, March 17, 2006.

_____
RICHARD B. MILLER
PATRICIA KEHAU WALL

Attorneys for Plaintiff
ALLSTATE INSURANCE COMPANY