**TOM PETRUS & MILLER, LLLC**

RICHARD B. MILLER   3729-0
rmiller@tpm-hawaii.com
Telephone: (808) 792-5855
PATRICIA KEHAU WALL   3498-0
kwall@tpm-hawaii.com
Telephone: (808) 792-5823
Finance Factors Center
1164 Bishop Street, Suite 650
Honolulu, Hawaii 96813
Telephone: (808) 792-5800

Attorneys for Plaintiff
ALLSTATE INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, an Illinois corporation<br><br>          Plaintiff,<br><br>vs.<br><br>MARK DANIEL DAVIS; ELLEN PEARL DAVIS; and MARK DAVIS, JR., a minor,<br><br>          Defendants. | CIVIL NO. 04-CV-418<br>(Declaratory Judgment)<br><br>PLAINTIFF ALLSTATE INSURANCE COMPANY'S REPLY TO INTERVENORS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE<br><br>Hearing:<br>Date: March 28, 2006<br>Time: 9:30 a.m.<br>Judge: Hon. Alan C. Kay<br><br>No Trial Date |

PLAINTIFF ALLSTATE INSURANCE COMPANY'S REPLY TO
INTERVENORS' SUPPLEMENTAL MEMORANDUM IN
<u>OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

I.   <u>INTRODUCTION</u>

Plaintiff Allstate Insurance Company ("Allstate") hereby submits its Reply to Intervenors George and Tumata Tadeo's ("Intervenors'") Supplemental Memorandum in Opposition to Allstate's Motion for Summary Judgment.[1]

As they did in their original memorandum in opposition, Intervenors continue to mischaracterize Hawaii case law with respect to the construction of the "occurrence" requirement and "intentional acts" exclusions in insurance policies. This case law makes Defendant Mark Davis Jr.'s ("Mark's") subjective intent at the time he assaulted and killed Kau`ilani Tiarau Lucas-Tadeo ("Kau`ilani") irrelevant. Intervenors also mischaracterize the authorities cited in Plaintiffs' memoranda (including, but not limited to, this Court's decision in <u>Allstate Ins. Co. v. Kim</u>, 121 F.Supp.2d 1301 (D.Haw. 2000)) while offering four additional cases

---

[1] Although they seem to suggest otherwise in their *ex parte* motion for leave to file a supplemental memorandum in opposition, Intervenors offer no new arguments or evidence in their supplemental memorandum. They do cite a few additional cases, *none* of which appears to involve exclusionary language similar to that at issue in this case – i.e., none of the cases is even remotely on point – and *all* of which were decided some time ago and thus were readily available to Intervenors' counsel at the time Intervenors submitted their original memorandum in opposition.

2

which Intervenors appear to assert are relevant simply because they involve policies issued by Allstate, *notwithstanding the fact that **none** of these cases involves policy language identical or even similar to that at issue in the instant case.*

By contrast, the cases already cited by Allstate, and cited again here, involved policy language identical or substantially similar to that found in the intentional and criminal acts exclusion in the policy issued to Mr. and Mrs. Davis.

II. ARGUMENT

A. Hawaii Law Prescribes an *Objective* Test of an Insured's Intent

Intervenors continue to insist that Mark's *subjective* intent to cause Kau`ilani bodily injury is determinative of the coverage questions in this case. This is clearly not the law in Hawaii. Rather, as Allstate has previously noted, Hawaii law applies an *objective* test in assessing an insured's intent. Although it is true, as Intervenors assert, that Hawaii courts determine whether an injury is "accidental" by looking at it from the standpoint of an insured, this test does not depend on the insured's subjective belief. Rather, the critical question is whether a *reasonable* person engaging in the conduct that the insured is alleged to have engaged in would expect or anticipate that injury would result. See Hawaiian Ins. & Guar. Co., Ltd. v. Blanco, 72 Haw. 9, 804 P.2d 876 (Haw. 1990) (where

3

complaint in underlying lawsuit alleged that wife of shooting victim suffered emotional distress as a result of witnessing husband being shot by insured, and reasonable man in insured's position would have anticipated that firing a rifle in direction of victim would result in victim's spouse suffering emotional distress upon witnessing the incident, wife's injury was not an accident or "occurrence" within meaning of liability policy, and insurer thus had no duty to defend insured) (overruled in part on other grounds, Dairy Road Partners v. Island Ins. Co., Ltd., 92 Haw. 398, 992 P.2d 93 (Haw. 2000) (holding that insurers may not rely on evidence as to extrinsic facts in dispute in underlying lawsuit to deny coverage but reaffirming rule that where pleadings in underlying lawsuit fail to assert any *facts* giving rise to a covered claim, as opposed to legal theories or conclusory labels applied by claimant, insurer has no duty to defend insured).

  B. The Policy's Intentional and Criminal Acts Exclusion Applies Regardless of Mark's Subjective Intent to Harm Kau'ilani

The homeowner's policy at issue in this case provides, unambiguously, as follows:

> ***Losses We Do Not Cover Under Coverage X:***
>
> **1.** **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal

> acts or omissions of, any **insured person**. This exclusion applies even if:
>
> a)  such insured person lacks the mental capacity to govern his or her conduct;
>
> b)  such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
>
> c)  such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

Plaintiff's Separate Concise Statement at ¶ 8.

Intervenors argue, essentially, that the Court should ignore subsection a), which provides that the exclusion for bodily injury intended by, or which may reasonably be expected to result from, the insured's intentional or criminal acts applies regardless of whether an insured lacks the mental capacity to govern his or her conduct. Obviously, the Court cannot do this. See Fortune v. Wong, 68 Haw. 1, 11, 702 P.2d 299, 306 (Haw. 1985) (a court cannot rewrite an insurance contract between the parties); Sentinel Ins. Co. v. First Ins. Co. of Hawaii, 76 Haw. 277, 298, 875 P.2d 894, 915 (Haw. 1994) (a court must respect the plain terms of a policy and "not create ambiguity where none exists").

5

Alternatively, Intervenors argue that the Court must first find that Mark subjectively intended or expected his conduct to result in an injury to Kau'ilani before it can even get to the language providing that the exclusion applies regardless of an insured's mental capacity. However, this argument is circular. If Mark did not have the mental capacity to govern his conduct, then, Intervenors' argument goes, he could not have formed an intent to injure Kau'ilani. Under Intervenors' interpretation, subsection a) is rendered meaningless. Further, this argument ignores the fact that the exclusion applies to bodily injury "*which may reasonably be expected to result from* the intentional or criminal acts or omissions of, any insured person." The exclusion does not require that the insured in question subjectively intend or even expect that his intentional or criminal acts or omissions will cause injury. It is enough that such injury *may reasonably be expected* to result, i.e., that a reasonable person in the insured's position would expect such injury to result. This objective test is entirely consistent with Hawaii law, as described above.

Intervenors cite to four decisions in declaratory relief actions from other jurisdictions involving insurance policies issued by Allstate. Obviously, the fact that these cases involved Allstate (an insurer which has issued millions of homeowners policies nationwide) does not make them relevant to the instant

6

matter. These cases might have some persuasive value if they involved policies with exclusions identical or similar to the one at issue here and if they came from jurisdictions which apply the same objective test with regard to an insured's intent as Hawaii courts do. Unfortunately, *none* of the cases cited by intervenors meets this test.

For example, in Allstate Ins. Co. v. Barron, 848 A.2d 1165 (Conn. 2004), an apparently deranged insured stabbed her husband to death and attacked one of her children before setting a fire that killed her and two of her children. Allstate sought to disclaim coverage on the ground that the deaths of the husband and the children were not accidental and that coverage was excluded by the subject policy's intentional acts exclusion, which provided, in pertinent part, as follows:

> We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person.... This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

Id. at 1168.

The Connecticut Supreme Court held that fact questions as to the insured's mental capacity precluded summary judgment in favor of Allstate.

Notably, the subject policy apparently did not contain the provision in the Policy at issue here which provided that the intentional acts exclusion applies regardless of an insured's mental capacity. Moreover, the court in Barron relied on a previous Connecticut appellate court decision holding that an insured's mental condition may negate his or her intent and bar the application of an intentional act exclusion in a liability policy. See Home Ins. Co. v. Aetna Life & Cas. Co., 644 A.2d 933 (Conn.App. 1994), rev'd on other grounds, 663 A.2d 1001 (Conn. 1995). Hawaii's appellate courts, which apply an *objective* test with regard to an insured's intent, have issued no such decision.

Likewise, the court in Allstate Ins. Co. v. Carr, 409 A.2d 782 (N.H. 1979), which involved a shooting by an insured, describes the exclusion at issue therein as precluding coverage for bodily injury "expected or intended from the standpoint of the insured." There is no discussion of the question of capacity and, indeed, the insured claimed that he had "stumbled" while holding a gun, causing it to accidentally discharge, and that he never intended to shoot the victim. Neither the relevant policy language nor factual scenario in Carr bear any similarity to the exclusionary language or facts in this case.

In Allstate Ins. Co. v. Biggerstaff, 703 F.Supp. 23 (D.S.C. 1989), also relied on by Intervenors, the Court did not quote from the intentional acts

8

exclusion at issue, but applied controlling law from South Carolina's appellate courts providing that for an insurance policy's intentional acts exclusion to apply, an insured must subjectively intend not only his or her act, but the resulting injury as well. As discussed above, this is clearly not the law in Hawaii.

Finally, the exclusionary language at issue in <u>Allstate Ins. Co. v. Overton</u>, 206 Cal.Rptr. 823 (Cal.App. 1985) provided in pertinent part that the policy did "not cover bodily injury or property damage *intentionally caused by an insured person*." Given this language, and a California statute providing for noncoverage where an insured *wilfully* causes injury, the court held that the insured's conviction for misdemeanor battery stemming from an incident involving the claimant did not collaterally estop the insured from disputing the issue of intent in a declaratory relief action.

While none of the cases cited by Intervenors in their supplemental memorandum involved exclusionary language the same or substantially similar to that at issue here, the cases already cited by Allstate do just that (contrary to Intervenors' assertion that *neither* party had cited cases embodying the exclusionary language at issue here). See, e.g., <u>Cary v. Allstate Ins. Co.</u>, 922 P.2d 1335 (Wash. 1996) (where insurance policy excluded bodily injury arising from insured's criminal acts, or acts of a criminal nature, even if the insured person

9

lacked the mental capacity to appreciate the wrongfulness of his acts or conform his conduct to the requirements of the law, there was no coverage under policy for fatal stabbing by insured who was acquitted of crime by reason of insanity); Allstate Ins. Co. v. Burrough, 914 F.Supp. 308 (W.D.Ark. 1996) (criminal acts exclusion of homeowners' insurance policy applied to act of insured minor in furnishing juvenile with handgun involved in accidental shooting; exclusion applied whether or not insured was actually charged with crime and even if insured lacked mental capacity to govern conduct, and it thus applied so long as insured engaged in conduct described as criminal in penal code); Kimble ex rel. Dedon v. Allstate Ins. Co., 710 So.2d 1146 (La.App. 1996) (liability coverage for fatal shooting by insane insured was barred by intentional injury exclusion of homeowners' insurance policy, whether or not insured could form intent to injure; exclusion applied even if insured lacked mental capacity to govern his or her conduct).

In their complaint in the Underlying Lawsuit, Intervenors clearly allege criminal conduct by Defendant, i.e., an unlawful assault on Kau`ilani resulting in her death. Defendant's subjective intent, or his capacity to form such

intent, is irrelevant. Thus, coverage for the claims arising from Kau`ilani's death is excluded under the Policy.[2]

C. There is No Coverage for the Claims Against Mr. and Mrs. Davis

Because the Policy excludes coverage for losses caused by the intentional or criminal acts of "any insured," Mark's intentional acts resulting in the death of Kau`ilani preclude coverage for his parents as well. This is so regardless of whether the claims are for vicarious liability or for the parents' own negligence in their care and supervision of their son. See, e.g., Allstate Ins. Co. v. Jordan, 16 S.W.3d 777 (Tenn. App. 1999) (exclusion for intentional or criminal acts of "*an* insured" precluded coverage for claims of negligent supervision against parents of minor who shot pizza delivery person); Caroff v. Farmers Ins. Co. of Washington, 989 P.2d 1233, 1237 (Wash.App. 1999) (parents of teenager who sexually molested three-year-old child were not entitled to coverage for child's injuries under umbrella and homeowners insurance policies that specifically excluded coverage for injuries caused by or arising out of the actual, alleged, or threatened molestation of a child by "any insured," even though

---

[2]Hawaii law providing for an objective test in assessing an insured's intent for purposes of determining whether a claim arises from an occurrence and/or is excluded by a policy's intentional acts exclusion is well settled. There is thus no need for this Court to certify the coverage questions presented herein to the Hawaii Supreme Court, as Intervenors suggest.

11

severability clauses provided that coverage applied separately to each insured); *Glover v. Allstate Ins. Co.*, 493 S.E.2d 612, 615 (Ga. App. 1997) (exclusion in homeowners policy for criminal act of insured barred coverage for claims against minor *and* his parents arising from shooting by minor); Canutillo Independent School Dist. v. National Union Fire Ins. Co. of Pittsburgh, 99 F.3d 695, 704-705 (5th Cir. 1996) (where a claim against an insured would not exist "but for" conduct explicitly excluded by the policy, the dependent claims are also not covered under the policy); Allstate Ins. Co. v. Steele, 74 F.3d 878, 881 (8th Cir. 1996) (exclusion for damages "resulting from" the intentional act of *an* insured person precludes coverage for any insured for same damages).

Contrary to Intervenors' assertion, the claims addressed by this Court's decision in Allstate Ins. Co. v. Kim, 121 F.Supp.2d 1301 (D.Haw. 2000) (applying an exclusion identical to the one at issue here to find no coverage for claims against parents of minor assailant) did involve claims for negligent supervision and discipline as well as vicarious liability on the basis of Hawaii's parental liability statute). See Kim, 121 F.Supp. at 1302 (plaintiff in underlying lawsuit alleged that her assailant's parents negligently failed to properly discipline their son or to obtain medical and/or psychological assistance for him and ratified and consented to their son's wrongful conduct).

Intervenors do not dispute that Mark is an insured under the Policy. Under the plain language of the exclusion, and pursuant to the authorities cited above, the exclusion precludes coverage for all insureds, including Mr. and Mrs. Davis, because Kau`ilani's injuries arose from Mark's intentional and/or criminal conduct.

III. CONCLUSION

For all the foregoing reasons, Allstate respectfully renews its request that the Court GRANT its Motion for Summary Judgment.

DATED:   Honolulu, Hawaii, March 24, 2006.

*/s/ Michael*
RICHARD B. MILLER
PATRICIA KEHAU WALL

Attorneys for Plaintiff
ALLSTATE INSURANCE COMPANY