IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ALLSTATE INSURANCE COMPANY,   )   Civ. No. 04-00418 (ACK/BMK)
an Illinois corporation,      )
                              )
          Plaintiff,          )
                              )
     v.                       )
                              )
MARK DANIEL DAVIS; ELLEN      )
PEARL DAVIS; and MARK DAVIS,  )
JR., a minor,                 )
                              )
          Defendants,         )
                              )
     and                      )
                              )
GEORGE TADEO and TUMATA        )
TADEO,                        )
                              )
          Intervenors.        )
_____)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BACKGROUND

I.   Procedural History

On July 13, 2004, Allstate Insurance Company

("Plaintiff") filed a Complaint in the present action seeking

declaratory judgment regarding its obligation to defend and/or

indemnify Defendants Mark Daniel Davis, Ellen Pearl Davis, and

Mark Davis, Jr. in connection with the pending state court

lawsuit entitled George L. Tadeo, et al. v. Mark Davis, Jr., et

al., Civ. No. 03-1-0260, filed on September 22, 2003 ("State

Court Action").  This action was brought pursuant to 28 U.S.C. §

1332 and 28 U.S.C. § 2201.

On March 11, 2005, Default was entered by the Clerk against Defendants Ellen Pearl Davis, Mark Daniel Davis, and Mark Davis, Jr. as to Plaintiff's Complaint.

On May 19, 2005, Plaintiff filed a Motion for Default Judgment, or in the Alternative, for Summary Judgment and a Separate Concise Statement of Undisputed Facts.

On August 22, 2005, George and Tumata Tadeo filed a Motion to Intervene.  Plaintiff opposed this motion, but Magistrate Judge Kurren granted Tadeos' Motion to Intervene on October 17, 2005.

Also on August 22, 2005, the Court heard Plaintiff's Motion for Default or Summary Judgment.  Defendants Ellen Pearl Davis, Mark Daniel Davis, and Mark Davis, Jr. were not present and were not represented at the hearing.

On August 24, 2005, the Court issued an Order granting Plaintiff's Motion for Default Judgment against Mark Daniel Davis and Ellen Pearl Davis, and did not address the Motion for Summary Judgment as to the same Defendants.  The Court denied Plaintiff's Motion for Default Judgment against Mark Davis, Jr. because he is a minor.  The Court did not address the Motion for Summary Judgment against Mark Davis, Jr..  The Court determined that it was necessary to appoint a guardian ad litem for Mark Davis, Jr..

On September 9, 2005, Keith Hiraoka was appointed as

2

guardian ad litem for Mark Davis, Jr..

On October 25, 2005, Magistrate Judge Kurren set aside the entry of default as it pertained to Mark Davis, Jr. allowing him to file his Answer to Plaintiff's Complaint for declaratory judgment.  Mark Davis, Jr. filed an Answer on November 14, 2005.

Plaintiff filed a Motion for Summary Judgment ("Motion") on December 6, 2005.  Plaintiff also filed a Concise Statement of Facts in Support of its Motion ("Motion CSF").

On January 11, 2006, Intervenors filed an Opposition to Plaintiff's Motion for Summary Judgment ("Intervenors' Opposition").  On January 17, 2006, Intervenors filed a Concise Statement of Facts in Support of their Opposition ("Intervenors' Opposition CSF").  On March 10, 2006, Intervenors filed a Supplement to their Opposition CSF ("Intervenors' Opposition CSF Supplement").  On March 13, 2006, Intervenors also filed an Affidavit of Harold V. Hall in support of their Opposition ("Intervenors' Opposition Affidavit").

On March 9, 2006, Defendant Mark Davis, Jr. filed his Opposition to Plaintiff's Motion for Summary Judgment (Defendant's Opposition).  Defendant Mark Davis, Jr. also filed a Concise Statement of Facts in support of his Opposition.

On March 17, 2006, Plaintiff filed a Reply to the Defendant Mark Davis, Jr. and Intervenors' Oppositions.

On March 22, 2006, Intervenors filed an Ex Parte Motion

requesting leave to file a Supplement to Intervenors' Opposition with the supplement attached as Exhibit 1.  The Court granted the Motion on March 23, 2006 and granted leave for Plaintiff to reply to the Supplement to Intervenors' Opposition.

On March 24, 2006 Plaintiff filed a Reply to the Supplement to Intervenors' Opposition.

The parties appeared before the Court for a hearing regarding Plaintiff's Motion for Summary Judgment on March 28, 2006.

On March 29, 2006, at the Court's direction, Plaintiff filed a Supplemental Declaration of Attorney Patricia Wall ("Supplemental Wall Declaration") with the underlying state criminal complaint against Mark Davis, Jr., Cr. No. 05-1-0182, and the related June 7, 2005 criminal judgment entitled "Judgment of Acquittal and Order Committing Defendant to the Custody of the Director of Health" attached as exhibits.

On April 4, 2006, the Court granted leave to all parties to file a memorandum in response to the submission of the certified criminal complaint and criminal judgment.

On April 10, 2006, Defendant Mark Davis, Jr. filed a Memorandum in Response to Plaintiff's Supplemental Filing.  On April 11, 2006, Plaintiff filed a Memorandum Regarding Plaintiff's Supplemental Filing, and Intervenors filed their Response to Plaintiff's Supplemental Filing.

On April 20, 2006, the Court issued an Order granting Intervenors and Defendant leave to file rebuttal evidence to the criminal complaint and criminal judgment.

On April 26, 2006, Intervenors filed a declaration of Thomas Tsuchiyama, the Davis family attorney in the underlying state case, with Ellen Pearl Davis' August 25, 2004 Response to the Tadeos' First Request for Answers to Interrogatories and Production of Documents attached as Exhibit 1.

## II.   <u>Factual History</u>

On September 22, 2003, George L. Tadeo (individually and as special administrator of their daughter Kau'ilani's Estate) and Tumata H. Tadeo (collectively, the "Tadeos" or "Intervenors") filed the underlying action, <u>Tadeo v. Davis</u>, Civ. No. 03-1-0260, which is currently pending in the Circuit Court of the Third Circuit, State of Hawaii.  (Motion CSF ¶ 1).  In their state court complaint, the Tadeos allege that on or about September 27, 2001, Mark Davis, Jr. ("Mark") "negligently, recklessly and/or intentionally assault[ed]" Kau'ilani Tiarau Lucas-Tadeo ("Kau'ilani"), inflicting traumatic head injuries that resulted in severe pain, mental suffering, and death. (Motion CSF, Ex. 2 ¶¶ 12-13).  The Tadeos also allege that Mark Daniel Davis and Ellen Pearl Davis ("Mr. and Mrs. Davis") "negligently and/or recklessly" supervised Mark and that their failure of supervision directly and proximately resulted in

5

Mark's alleged assault upon Kau'ilani.  (Motion CSF, Ex. 2 ¶¶ 20-26).  The Tadeos seek general and special damages based on their claims of assault, infliction of emotional distress, wrongful death, parental liability (pursuant to Haw. Rev. Stat. § 577-3), and negligent supervision. (Motion CSF, Ex. 2 ¶ 27).

Plaintiff issued a Deluxe Homeowners Policy to Mr. and Mrs. Davis, Policy Number 064490342 (the "Policy").  (Motion CSF ¶ 5).  The Policy was in effect on September 27, 2001, the date of Mark's alleged assault on Kau'ilani.  (Motion CSF ¶ 6).  On or about March 9, 2004, Mr. and Mrs. Davis tendered the defense of the underlying action to Plaintiff through its agent.  (Motion CSF ¶ 11).  Plaintiff alleges that this was the first notice that it received of the Tadeos' claims.  (Motion CSF ¶ 11).  Plaintiff has provided a defense to its insureds in the State Court Action under a reservation of rights.  (Motion CSF ¶ 12).

On June 7, 2005, the State of Hawaii charged Mark Davis, Jr. with one count of Murder in the Second Degree[1] in violation of H.R.S. §§ 707-701.5, 706-657, and two counts of Sexual Assault in the First Degree[2] in violation of H.R.S. §§ 707-730(1)(b), 706-660 in the Circuit Court of the Third Circuit.

---

[1] A person commits Murder in the Second Degree if that person "intentionally or knowingly causes the death of another person." H.R.S. § 707-701.5.

[2] A person commits Sexual Assault in the First Degree if that person "knowingly engages in sexual penetration with another person who is less than fourteen years old."  H.R.S. § 707-730(1)(b).

In the State's complaint, Cr. No. 05-1-0182 ("Criminal Complaint"), the State alleged that Mark Davis, Jr. "intentionally or knowingly caused the death of another person, Kau'ilani Lucas-Tadeo, a minor age 6, in a manner that was especially heinous, atrocious, or cruel, manifesting exceptional depravity." (Supplemental Wall Declaration, Ex. 4 at 1).

On June 7, 2005, after a jury-waived trial, the court entered a judgment of acquittal and ordered Mark Davis, Jr. be committed to the custody of the Director of Health ("Criminal Judgment"). Based on the evidence presented at trial, the court concluded that the State had proven "the elements of the charges of Murder in the Second Degree, Sexual Assault in the First Degree and Sexual Assault in the First Degree against Defendant as set forth in the Complaint, filed herein June 7, 2005, beyond a reasonable doubt." (Supplemental Wall Declaration, Ex. 5 at 1). However, the Court also concluded that the Defendant had proven by the preponderance of the evidence that "at the time he committed the acts which resulted in the charges, Defendant suffered from a physical or mental disease, disorder or defect which substantially impaired his capacity to conform his conduct to the requirements of the law and his capacity to appreciate the wrongfulness of his conduct." (Supplemental Wall Declaration, Ex. 5 at 2). As a result, the Court acquitted Mark of the charged offenses "on the ground of mental disease, disorder or

defect" and committed him to the custody of the Department of

Health.  (Supplemental Wall Declaration, Ex. 5 at 2).

**STANDARD**

The purpose of summary judgment is to identify and

dispose of factually unsupported claims and defenses.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary

judgment is therefore appropriate when the "pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law."[3]  Fed. R. Civ. P.

56(c); Querubin v. Thronas, 107 Haw. 48, 56, 109 P.3d 689, 697

(Haw. 2005).

"A fact is 'material' when, under the governing

substantive law, it could affect the outcome of the case.  A

genuine issue of material fact arises if 'the evidence is such

that a reasonable jury could return a verdict for the nonmoving

party.'"[4]  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav.

---

[3] Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence that a court may consider when determining whether a material issue of fact exists. Fed. R. Civ. P. 56(e).  Legal memoranda and oral argument are not evidence and do not create issues of fact.  See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

[4] Disputes as to immaterial issues of fact do "not preclude summary judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1478 (9th Cir. 1986).

Ass'n, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting Union Sch. Dist. v. Smith, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal citations omitted).  Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party.  See, e.g., T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).  So, too, the court's role is not to make credibility assessments.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  Id. at 250-51.

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material

issue of fact precludes summary judgment.  See Celotex, 477 U.S. 322-23; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).  Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., 809 F.2d at 630.  The nonmoving party must instead set forth "significant probative evidence" in support.  T.W. Elec. Serv., 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.[5]  See Celotex, 477 U.S. at 322.

## DISCUSSION

Plaintiff requests this Court determine as a matter of law that it has no duty to defend and/or indemnify Defendants

---

[5]  When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment." UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995).  Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule." Id. (quoting Fed. R. Civ. P. 56(e)); Charles Alan Wright et al., Federal Practice & Procedure § 2727 (3d ed. 1998).  The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000); accord Dye v. United States, 121 F.3d 1399, 1409 (10th Cir. 1997).

for claims arising from the alleged assault committed against Kau'ilani Tadeo.  Defendant Mark Davis, Jr. and Intervenors the Tadeos oppose the Motion for Summary Judgment.  In addition, Mark opposes the Court's grant of jurisdiction over the declaratory judgment action, or in the alternative, requests the Court grant a stay in the action until the underlying State Court Action is resolved.

## I.    Objection to Jurisdiction and/or Request for Stay

Defendant Mark objects to the Court's exercise of its discretionary jurisdiction over Plaintiff Allstate's Complaint for Declaratory Judgment.  Mark contends that there is a presumption that this claim should be heard in Hawaii state court because there is a pending action in state court involving the same parties and issues.  (Defendant's Opposition at 2).  In the alternative, Mark contends that the declaratory judgment action should be stayed as common issues of fact exist with the state court action.  (Defendant's Opposition at 5).

The Declaratory Judgment Act states that "courts *may* declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added).  Therefore, a district court is under no compulsion to exercise its jurisdiction.  Brillhart v. Excess Insurance Company of America, 316 U.S. 491, 494 (1942).  Rather, district courts are vested with discretion as to whether they will entertain

declaratory judgment actions.  Wilton v. Seven Falls Co., 515 U.S. 277, 288-89 (1995).

In cases where parallel state proceedings exist, "there is a presumption that the entire suit should be heard in state court."  Government Employees Insurance Company v. Dizol, 133 F.3d 1220, 1225 (9th Cir.) (citing Chamberlain v. Allstate Insurance Co., 931 F.2d 1361, 1366-67 (9th Cir. 1991)).  Courts should avoid gratuitous interference as it would be uneconomical and vexatious for a federal court to proceed with a declaratory judgment action in these situations.  Wilton, 515 U.S. at 282-83 (citing Brillhart, 316 U.S. at 495).  However, the existence of a pendent state action does not automatically bar a request for federal declaratory relief.  Chamberlain, 931 F.2d at 1367.  Moreover, "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course."  Wilton, 515 U.S. at 288 n. 2.  Courts consider several relevant factors in determining whether to exercise jurisdiction or stay the declaratory judgment proceeding.

In this analysis a court must proceed cautiously, balancing concerns of judicial administration, comity, and fairness to the litigants.  Chamberlain, 931 F.2d at 1367.  The Supreme Court cautioned district courts to (1) avoid needless determination of state law issues; (2) discourage litigants from

filing declaratory actions in an attempt to forum shop; and (3)

avoid duplicative litigation.  Dizol, 133 F.3d at 1225 (citing

Brillhart, 316 U.S. at 494); Chamberlain, 931 F.2d at 1367.  In

addition to the Brillhart factors, the Ninth Circuit suggested

district courts consider the following additional factors:

> whether the declaratory action will settle all aspects
> of the controversy; whether the declaratory action will
> serve a useful purpose in clarifying the legal
> relations at issue; whether the declaratory action is
> being sought merely for the purposes of procedural
> fencing or to obtain a 'res judicata' advantage; or
> whether the use of a declaratory action will result in
> entanglement between the federal and state court
> systems. In addition, the district court might also
> consider the convenience of the parties, and the
> availability and relative convenience of other
> remedies.

Dizol, 133 F.3d at 1225 n. 5 (quoting American States Insurance

Company v. Kearns, 15 F.3d 142, 145 (9th Cir. 1994) (J. Garth,

concurring)).  The Court now balances the Supreme Court's three

Brillhart factors along with the Ninth Circuit's Kearns factors

as they relate to Plaintiff's Request for Declaratory Judgment.

A.    State Law Interpretation Not Implicated

"The concern in this factor is with unsettled issues

of state law, not fact-finding in the specific case." National

Chiropractic Mutual Insurance Co. v. Doe, 23 F. Supp. 2d 1109,

1118 (D. Alaska 1998) (citing Cont'l Cas. Co. v. Robsac Indus.,

947 F.2d 1367, 1371 (9th Cir. 1991), overruled on other grounds

by Dizol, 133 F.3d at 1227).  When state law is unclear,

"[a]bsent a strong countervailing federal interest, the federal

court should not elbow its way ... to render what may be an 'uncertain' and 'ephemeral' interpretation of state law." Mitcheson v. Harris, 955 F.2d 235, 238 (4th Cir. 1992).

The issues before the Court in this action do not implicate novel or unsettled matters of state law. On numerous occasions, the United States District Court in the District of Hawaii has interpreted insurance policies pursuant to Hawaii state law to determine the scope of an insurer's duties to an insured. As will be subsequently discussed, potential ambiguities in state law relating to the interpretation of an insurer's duty are not implicated for the purposes of this Court's determination. This factor weighs in favor of exercising jurisdiction.

B.   No Evidence of Forum Shopping

A party is typically understood to be forum shopping for "filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." American Casualty Company of Reading, Pennsylvania v. Krieger, 181 F.3d 1113, 1119 (9th Cir. 1999). Courts have defined improper forum shopping to encompass situations where the action is "reactive" or "defensive" in that the insurer files a claim in federal court after it has already been sued in state court by either the injured third party or the insured. National Chiropractic, 23 F. Supp. 2d at 1117-18.

14

Allstate was never named as a party to the State Court Action.  Furthermore, any attempt by Allstate to intervene in the State Court Action would likely be barred.  Hawaii law disfavors the joinder of an insurer in a third-party tort action absent some contractual or statutory provision.  See Olokele Sugar Co. v. McCabe, Hamilton & Renny Co., 53 Haw. 69, 71-72 (1971) (holding that "it would not be sound public policy to permit the insurer to be joined as a defendant, in deference to what is believed to be a jury's tendency to find negligence or augment the damages, if it thinks that an affluent institution such as an insurance company will bear the loss").  Therefore, Allstate's only recourse, if jurisdiction in this Court is denied, would be to file a similar claim for declaratory relief in a separate state court action pursuant to H.R.S. § 632-1 authorizing actions for declaratory judgment.

Declining jurisdiction under these circumstances would deprive Allstate of its choice to litigate this matter in federal court, and undermine the federal interest in providing a neutral forum free from an appearance of favoritism against an out-of-state party.  This factor weighs in favor of exercising jurisdiction.

C.    Duplicative Litigation Not at Issue

The Brillhart Court counseled against exercising jurisdiction over claims for declaratory relief that would entail

15

a needless determination of state law issues.  316 U.S. at 495.
In cases where parallel state proceedings exist, "there is a
presumption that the entire suit should be heard in state court."
Dizol, 133 F.3d at 1225.  However, there is no presumption in
favor of abstention generally or in insurance coverage
proceedings specifically.  Id.

Here, Plaintiff is not a party in the underlying State
Court Action and the state court has no reason to consider
whether Allstate has any duty to defend or indemnify the
Defendants.  However, duplicative litigation may be a concern if
this Court's determination regarding Allstate's duties hinges on
a finding that will also be addressed in the state court.  The
Court is mindful that the duty to defend and the duty to
indemnify are separate and distinct.  Sentinel Ins. Co. v. First
Ins. of Hawai'i, 76 Haw. 277, 291 (1994).  Therefore, the Court
considers the duplicative litigation factor separately for each
duty.

1.    Duty to Defend

Under Hawaii law, an insurer's duty to defend is
contractual in nature and a court must examine the terms of the
policy to determine the scope of the duty.  Commerce & Industry
Insurance Co. v. Bank of Hawaii, 73 Haw. 322, 325 (1992).  An
insurer's duty to defend arises "whenever an action raises the
potential for indemnification liability of the insurer to the

16

insured." <u>First Insurance Co. v. State of Hawaii</u>, 66 Haw. 413, 420 (1983).  This duty is determined from the face of the complaint at the time the suit is brought, not at the conclusion of the litigation.  <u>Id.</u>  However, "where the facts at issue can no longer be disputed in the underlying lawsuit because they have *already* been conclusively established for the purposes of those proceedings prior to the resolution of the declaratory judgment, [there is] no reason why evidence of such facts should not be available in the declaratory judgment action."  <u>Dairy Road Partners v. Island Insurance Company, Ltd.</u>, 92 Haw. 398, 422 n. 13 (2000).

To determine whether Allstate must defend Mark and his parents, this Court only relies on the allegations in the underlying state court complaint and extrinsic evidence of facts that could not be resolved differently in the state court.  While similar facts and issues will be addressed, no duplicative litigation need transpire for this Court to complete its analysis.

2. <u>Duty to Indemnify</u>

A determination regarding Plaintiff's duty to indemnify Defendants is based on a fact-specific analysis of whether the alleged assault of Kau'ilani was committed by Mark and whether that assault was the result of negligent, reckless, and/or intentional conduct.  The state court will certainly address this

17

same inquiry to resolve Mark's liability.  However, as the Court
will subsequently explain, provisions in the Policy make this
Court's assessment of Mark's mental state at the time of the
assault unnecessary.  Ultimately, neither the analysis of the
duty to defend or indemnify will require duplicative litigation
and this factor weighs in favor of exercising jurisdiction.

D.   Kearns Factors Support Exercise of Jurisdiction

        Although this case will not settle the underlying
dispute in the State Court Action, it will clarify the legal
obligations between the parties.  See Harris v. United States
Fid. & Guar. Co., 569 F.2d 850, 852 (5th Cir. 1978) (stating that
a declaratory judgment need not resolve all the issues or the
entire controversy, "[t]he controversy settled by the declaratory
judgment need only be an autonomous dispute").

        Where an insurer disputes its coverage obligations with
regard to a third party's claim against the insured, declaratory
relief is appropriate to clarify the legal relationship between
the parties.  See Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d
734, 738 (2nd Cir. 1992).  The determination informs Allstate in
a timely manner as to its obligations to defend and informs all
parties of their ultimate burdens, which could assist settlement
negotiations.

        As stated above, there is no evidence that Allstate has
brought this action for purposes of procedural fencing or to

18

obtain a "res judicata" advantage.  Allstate could have elected to bring this same request for declaratory relief in state court and there is no evidence that this action had a defensive or reactionary legal posture.  There is no significant threat that determination of Allstate's duties will result in entanglement between the federal and state court systems.

Furthermore, the Court entered a default judgment against Defendants Mark Daniel Davis and Ellen Pearl Davis on August 24, 2005.  To decline to exercise jurisdiction over the declaratory action judgment at this time would result in an unnecessary inconvenience for all parties involved where proceedings in this court have already progressed to include the entry of default judgment against Mark and Ellen Davis. Accordingly, the Court finds that the overall weight of the additional factors supports retaining jurisdiction over this matter.

For the aforementioned reasons, the Court retains jurisdiction over Plaintiff's request for declaratory judgment as it pertains to its duty to defend and indemnify Defendants and now assesses the appropriateness of its Motion for Summary Judgment.  For the same reasons, the Court concludes there is no reason to issue a stay of the proceedings at this time.

## II.  Motion for Summary Judgment

"Insurance policies are subject to the general rules of

contract construction." _Dairy Road_, 92 Haw. at 411 (quoting

_First Insurance_, 66 Haw. at 423).  Insurance contracts are

contracts of adhesion, so they must be construed liberally in

favor of the insured, and ambiguities must be resolved against

the insurer.  _State Farm Fire & Casualty Co. v. Gorospe_, 106 F.

Supp. 2d 1028, 1031 (D. Haw. 2000)(_citing_ _Foote v. Royal_

_Insurance Co. of America_, 88 Haw. 122 (Haw. Ct. App. 1998).  "Put

another way, the rule is that policies are to be construed in

accord with the reasonable expectations of a layperson." _Dairy_

_Road_, 92 Haw. at 412 (citation omitted).

       The duty to defend and the duty to provide coverage are

separate and distinct.  _Sentinel_, 76 Haw. at 291.  The following

excerpt from the Defendants' Policy describes Allstate's

liability coverage of the Davis family at the time of the alleged

incident:

   ### _Family Liability Protection_

   Subject to the terms, conditions and limitations
   of this policy, Allstate will pay damages which an
   insured person becomes _legally obligated to pay_
   because of bodily injury or property damage
   arising from an occurrence to which this policy
   applies, and is covered by this part of the
   policy.

   We may investigate or settle any claim or suit for
   covered damages against an insured person.  If an
   insured person is sued for these damages, we will
   provide a defense with counsel of our choice, _even_
   _if the allegations are groundless, false or_
   _fraudulent_.  We are not obligated to pay any claim
   or judgment after we have exhausted our limit of
   liability.

(Motion CSF, Ex. 1 at 27) (emphasis added).  The plain language of the Policy illustrates a broader duty to defend, even in claims that may be "groundless, false, or fraudulent," than the duty to indemnify which is only triggered when Plaintiff is "legally obligated to pay."  See Bayudan v. Tradewind Insurance Company, Ltd., 87 Haw. 379, 383 (Haw. Ct. App. 1998).  Therefore, the Court will resolve Plaintiff's responsibility separately for each duty.  The Court also addresses Defendant Mark apart from Defendants Mr. and Mrs. Davis, whom the Court entered a default judgment against in this matter on August 24, 2005.

A.   Duty To Defend Mark At Time Defense Was Tendered

For a court to issue a declaration of law that the insurer has no duty to defend at summary judgment, the insurer has the burden of proving that no *possibility* exists that the insured would incur liability for a claim covered by its policy. Dairy Road, 92 Haw. at 412.

As previously stated, an insurer's duty to defend is contractual in nature and a court must examine the terms of the policy to determine the scope of the duty.  Commerce & Industry, 73 Haw. at 325.  The duty to defend arises "whenever an action raises the potential for indemnification liability of the insurer to the insured."  First Insurance, 66 Haw. at 420.  This duty is determined from the face of the complaint at the time the suit is brought, not at the conclusion of the litigation.  Id.  It is

inappropriate to consider extrinsic evidence outside of the complaint to determine the insurer's duty to defend unless the insurer can show "none of these facts might be resolved differently in the state court." Dairy Road, 92 Haw. at 421-22. When a suit raises potential indemnification liability for even one claim, the insurer has the duty to defend the insured against all claims. First Insurance, 66 Haw. at 417.

The Davis family Policy provides the following coverage pursuant to a Family Liability Provision:

> **Family Liability Protection**
>
> Subject to the terms, conditions and limitations of this policy, *Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury* or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
>
> We may investigate or settle any claim or suit for covered damages against an insured person.  If an insured person is sued for these damages, *we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent.* We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.

(Motion CSF, Ex. 1 at 27) (emphasis added).  An insured person "means [the policy holder] and, if a resident of your household: a) any relative; and b) any dependent person in your care." (Motion CSF, Ex. 1 at 3).  An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." (Motion CSF, Ex.

22

1 at 4).

In addition to the aforementioned Family Liability Protection, the Policy also covers the reasonable expenses of a person, pursuant to the Guest Medical Protection provision, who sustains a bodily injury when that person is:

    1.    on the insured premises with the permission of the insured person; or

    2.    *off the insured premises, if the bodily injury*:

        a)    arises out of a condition on the insured premises or immediately adjoining ways;

        b)    *is caused by the activities of an insured person or a residence employee;*

        c)    is caused by an animal owned by or in the care of an insured person; or

        d)    is sustained by a residence employee.

(Motion CSF, Ex. 1 at 29)(emphasis added).

However, the following exclusion applies to the Family Liability Protection and Guest Medical Protection:

    1.    We do not cover any bodily injury intended by, or which may reasonably be expected to result from *the intentional or criminal acts or omissions of, any insured person*.  This exclusion applies even if:

        a)    *such insured person lacks the mental capacity to govern his or her conduct;*

        b)    such bodily injury is of a different kind or degree than intended or reasonably expected; or

        c)    such bodily injury is sustained by a different person than intended or reasonably

23

expected.

> This exclusion applies regardless of whether or not
> such insured person is actually charged with, or
> convicted of a crime.

(Motion CSF, Ex. 1 at 27, 29-30) (emphasis added).

Mark and Intervenors claim that Allstate must defend Mark because there is a possibility that coverage exists pursuant to the Family Liability Protection and Guest Medical Protection provisions of the Policy for the underlying state claims the Tadeos have brought against him.  On the other hand, Allstate contends that the plain language of the Policy precludes any duty to defend Mark in the State Court Action.

It is not disputed that Mark was an insured person under the terms of the policy at the time of the incident on September 27, 2001.  Mark was a resident of Mr. and Mrs. Davis' household and a dependent person in the Davis' care.  It is also undisputed that the Tadeos seek damages from Mark for negligent, reckless, and/or intentional assault, infliction of emotional distress, and wrongful death.  The parties dispute whether the act was an "occurrence" as defined by the Policy, and whether an exclusion applies barring Mark's conduct from defense.

Allstate contends that it is absolved of a duty to defend Mark because none of the underlying allegations are based on an "occurrence" within the meaning of the Policy.  (Motion at 11).  Allstate claims the assault of Kau'ilani was not an

accident, as is required by the definition of an "occurrence" in the Policy, but rather an intentional act specifically excluded from coverage under both the Family Liability Protection and Guest Medical Protection provisions of the Policy.  Furthermore, Allstate claims that if any doubt exists as to whether Mark's alleged conduct was intentional only because of his mental capacity, then an exclusion applies which precludes any duty to defend.

Under Hawaii law, courts make the initial determination of the insurer's duty to defend based upon the facts alleged in the complaint from the underlying dispute.  In the present case, the underlying civil complaint alleges that Defendant Mark "negligently, recklessly, and or intentionally assault[ed]" Kau'ilani.[6]  (Motion CSF, Ex. 2 ¶ 12).  Based on this allegation, the Tadeos also seek damages from Mark for infliction of emotional distress and wrongful death.  (Motion CSF, Ex. 2 ¶¶ 16, 19).  The only statement of fact supporting this allegation is that as a result of the assault, Kau'ilani "suffered traumatic

---

[6]   In the context of criminal and tort law, an assault is defined as "the threat or use of force on another that causes the person to have a reasonable apprehension of imminent harmful or offensive contact; the act of putting another person in reasonable fear or apprehension of an immediate battery by means of an act amounting to an attempt or threat to commit battery." Black's Law Dictionary, 122 (8th ed. 2004).  While the underlying state action contains an assault tort claim, it should be noted that Hawaii criminal law does acknowledge a type of assault that may be the result of a negligent act.  H.R.S. 707-712(b) (third degree assault).

head injuries and was in severe pain of body and mind before succumbing to her death." Id. ¶ 13.  The plain language of the underlying civil complaint is clear, the Tadeos pled in the alternative that Mark allegedly assaulted Kau'ilani negligently, recklessly, and/or intentionally.  At the time they filed the complaint, the Tadeos simply did not presume to know or speculate as to additional details of the assault.  Therefore, if the Court was limited solely to the facts pled in the civil state court complaint, then it would be improper to conclude that Allstate has sufficiently proven there are no genuine issues of material fact as to whether Mark will be held liable for an act that the Policy covers.

However, the Hawaii Supreme Court stated "where the facts at issue can no longer be disputed in the underlying lawsuit because they have *already* been conclusively established for the purposes of those proceedings prior to the resolution of the declaratory judgment, we see no reason why evidence of such facts should not be available in the declaratory judgment action." Dairy Road, 92 Haw. at 422 n. 13 (citing Sterilite Corp. v. Continental Cas. Co., 17 Mass. App. Ct. 316, 458 N.E.2d 338, 344 (1983)).  Relying on this conclusion, Plaintiff has submitted the state Criminal Complaint and Criminal Judgment as extrinsic evidence to support its claim that it has no duty to

defend Mark.[7]   In the Criminal Judgment, the state court ruled
that Mark intentionally or knowingly committed Murder in the
Second Degree by causing the death of Kau'ilani "in a manner that
was especially heinous, atrocious, or cruel, manifesting
exceptional depravity."   The court also concluded that Mark
intentionally or knowingly committed two acts of Sexual Assault
in the First Degree.   However, Mark was acquitted of the charged
offenses on the ground of mental disease, disorder or defect
excluding penal responsibility.

Evidence of a criminal conviction may be presented as
evidence of the commission of a crime in a civil action, but it
is not conclusive evidence.   Hawaiian Ins. & Guar. Co., Ltd. v.
Blanco, 72 Haw. 9, 17 (overruled on other grounds by Dairy Road,
92 Haw. at 422-23) (citing Asato v. Furtado, 52 Haw. 284, 474
P.2d 288 (1970)).   There is no underlying criminal conviction,

---

[7]   Defendant and Intervenors challenged the authenticity and
foundation of the Criminal Judgment originally attached to the
Motion CSF as Exhibit 3.   To resolve this objection, the Court
directed Plaintiff to submit authenticated copies of the Criminal
Judgment and related Criminal Complaint.   On March 29, 2006,
pursuant to Federal Rule of Civil Procedure 56(e), Attorney
Patricia Wall submitted an affidavit stating that the attached
copies of the Criminal Complaint and Criminal Judgment were "true
and accurate certified" copies.   Both documents are stamped and
certified by the Clerk of the Third Circuit Court of the State of
Hawaii.   The Criminal Complaint refers to Mark Davis Jr. as
defendant and to Kua'ilani Lucas-Tadeo as the victim.   Both the
Criminal Complaint and Criminal Judgment share the case number Cr.
No. 05-1-0182.   The Court is satisfied that these exhibits are
properly submitted as evidence in support of a motion for summary
judgment and that the individuals referred to as Mark Davis, Jr.
and Kau'ilani Lucas-Tadeo are the same persons in this matter.

but there is a criminal judgment that found the State "has proven the elements of the charges of Murder in the Second Degree and Sexual Assault in the First Degree ... beyond a reasonable doubt." Criminal Judgment at 1. The Court concludes that the judgment acquitting Mark on "the ground of mental disease, disorder or defect" would not be conclusive evidence in the state court civil action. Criminal Judgment at 2; see Asato, 52 Haw. at 290. Therefore it is improper for this Court to consider the criminal judgment in evaluating whether Allstate has a duty to defend Mark. See Dairy Road, 92 Haw. at 422 ("the insurer may only disclaim its duty to defend by showing that *none* of the facts upon which it relies might be resolved differently in the underlying lawsuit").

For the foregoing reasons, the Court concludes that at the time the defense was tendered by the Davis family, Allstate had a duty to defend because the underlying state civil complaint alleges that Mark committed a negligent assault for which the possibility of coverage exists. The Court will not consider extrinsic evidence that has not been conclusively established for the purposes of a state civil action to aid its determination of whether Allstate has a duty to defend Mark.

B.   No Duty To Indemnify Mark

To succeed at summary judgment regarding the duty to indemnify, the insurer must establish the absence of a genuine

28

issue of material fact regarding "the question of coverage pursuant to the plain language of the insurance policies and the consequent entitlement to the entry of judgment as a matter of law." <u>Dairy Road</u>, 92 Haw. at 413.  Allstate is responsible for "damages which an insured person becomes legally obligated to pay because of bodily injury" (Motion CSF, Ex. 1 at 27), or for the "reasonable expenses" incurred under the Guest Medical Protection (Motion CSF, Ex. 1 at 29), subject to the exclusions within the policy.

Unlike the duty to defend Mark which must be based solely on the allegations in the underlying complaint or suitable conclusive extrinsic evidence, the duty to indemnify must be determined by whether actual liability of the insured may be established at trial considering all available evidence.

The Hawaii Supreme Court held that evidence of a prior criminal judgment is admissible in a civil case where (1) the issue on which the judgment is offered was necessarily decided; (2) a judgment on the merits was rendered; and (3) the party against whom the judgment is offered had a full and fair opportunity to litigate the claim.  <u>Asato</u> 52 Haw. at 290 (holding that a previous criminal judgment may be considered as evidence as long as the party whom it is offered against had "a full and complete 'day in court' on that issue").  In the underlying criminal case against Mark, it was necessary for the court to

29

make a determination about Mark's culpability and the court did rule on the merits.  It is also evident that Mark had a full and fair opportunity to litigate as he successfully proved by the preponderance of the evidence that he suffered from "a physical or mental disease, disorder or defect" at the time of the incident.  (Criminal Judgment ¶ 2).  The Court concludes that the Criminal Judgment would be permissible evidence in the civil state court action and should be considered for the purposes of these proceedings.

However, the <u>Asato</u> court also cautioned that evidence of a criminal judgment is not conclusive evidence in a civil action and parties should have the opportunity to rebut the judgment with their own evidence.  This Court's April 20, 2006 Order granted leave to Intervenors and Defendant Mark to file any rebuttal evidence against the Criminal Complaint or Criminal Judgment.  Intervenors submitted Ellen Pearl Davis's answers to interrogatories from the underlying civil action, and Defendant Mark offered no additional evidence.

In accordance with <u>Asato</u>, the Court concludes that the Criminal Complaint and Criminal Judgment may be considered as evidence for the purpose of analyzing whether Allstate has a duty to indemnify Mark and his parents.  The Court will also consider Intervenors' rebuttal evidence as it applies.

1.   <u>Count 1 – "Assault"</u>

As previously stated, the criminal court concluded that the State had proven the elements of Murder in the Second Degree and two counts of Sexual Assault in the First Degree, but acquitted him of the "charged offenses on the ground of mental disease, disorder or defect excluding penal responsibility." Criminal Judgment at 2.   Therefore, it is undetermined how the state civil court will rule regarding the impact of Mark's mental state at the time of the assault on his liability.   It is possible that the state court will determine, based on Mark's mental health, that Mark is not liable for an intentional tort. It is also possible that Mark may not be held liable for an intentional tort if he was under the influence of narcotics at the time of the assault.   (Ellen Pearl Davis' Answer to Interrogatory 4 (alleging that Mark told her he took drugs before the incident)).   It may conclude that he is only liable for negligent conduct.   <u>See</u> <u>Dairy Farm</u>, 92 Haw. at 419-420 (claims sounding in negligence are not restricted to "unintentional or 'careless' conduct").   However, this determination of liability based on Mark's mental capacity, based on either insanity or substance abuse, is irrelevant to the determination of Allstate's duties because of the plain language of the Policy exclusions.

Extrinsic evidence of facts established in the state criminal court indisputably demonstrate that the assault did not

31

happen accidentally.  Even if Mark cannot be held responsible for his intentional act because of his mental incapacity, the Policy contains an unambiguous exclusion that bars coverage in cases where an insured contends his conduct was not intentional due to his mental incapacity.  The Policy states "[w]e do not cover any bodily injury ... intended by, or which may reasonably be expected to result from the intentional or criminal acts ... of, any insured person.  This exclusion applies even if ... such insured person lacks the mental capacity to govern his or her conduct."  (Motion CSF, Ex. 1 at 27, 29).

Intervenors argue that courts around the country have refrained from determining the extent of the insurer's duty when the mental state of the insured is undetermined.  See American National Fire Insurance Company v. Cordie, 478 N.W.2d 531 (Minn. Ct. App. 1991) (holding that an intentional act exclusion did not apply when the insured's mental illness or defect prevented him from knowing the wrongfulness of his conduct and controlling himself); Aetna Cas. & Sur. Co. v. Dichtl, 398 N.E.2d 582 (Ill. App. 1979) (holding that whether the insured's mental capacity prevented her conduct from falling within an intentional conduct exclusion was a question of fact); Preston v. Granger, 517 So. 2d 1125 (La. App. 1987) (observing that an insane individual may not be capable of committing an intentional act as defined by an insurance policy exclusion); State Farm Fire & Cas, v. Morgan,

32

368 S.E. 2d 509 (Ga. 1988); <u>Rajspic v. Nationwide Mutual Insurance Co.</u>, 718 P.2d 1167 (Idaho 1986).  In these cases, courts held that it was premature to determine the insurer's duty when the insured's mental state was unknown, but there is no indication any of these cases involved insurance policies with a mental capacity exclusion.

In cases where courts applied identical or similar mental capacity exclusions as in the underlying Policy to acts that were not accidents, the overwhelming majority of courts held that the insured's intent is irrelevant when the basis for challenging whether the insured acted intentionally is insufficient mental capacity.  <u>Kimble ex rel. Dedon v. Allstate Insurance Co.</u>, 710 So. 2d 1146 (La. App. 1996); <u>Allstate Insurance Co. v. Lombardi</u>, 2003 WL 21666090, *5 (E.D. Pa. 2003) ("the Policy explicitly contemplates precisely the kind of intentional acts, undertaken while in a psychotic state, which, according to Defendants, occurred here, and the Policy expressly excludes from coverage injuries resulting from such acts...."); <u>Allstate Insurance Co. v. Sheridan</u>, 82 Fed. Appx. 777, 779 (3rd. Cir. 2003) ("by the express terms of the policy, [defendant's] purported lack of mental capacity at the time of the shooting is irrelevant")[8]; <u>Allstate Insurance Co. v. Burrough</u>, 914 F. Supp.

---

[8]    The Court finds this unpublished decision to be illustrative, although it is not relying on it as precedent.

308, 312 (W.D. Ark. 1996) (expressing in dicta that the identical mental capacity exclusion presumably bars coverage even when a mentally incompetent insured could not be prosecuted for criminal conduct because of his mental capacity); Cary v. Allstate Insurance Co., 922 P.2d 1335 (Wash. 1996) (affirming there was no coverage for a mentally insane insured because the policy excluded criminal conduct whether the insured was sane or not and that the provision did not violate public policy); Espanol v. Allstate Insurance Co., 601 S.E. 2d 821 (Ga. App. 2004).

In Kimble, a child sought to obligate an insurer to indemnify his insured uncle who murdered the child's father.   710 So. 2d at 1147.   It was undisputed that the uncle who shot the decedent was covered by the insurance policy and was insane at the time of the incident.   Id.   The trial court concluded, and the appellate court affirmed, that the insured committed an act that was not an accident, and that whether he "could form the requisite intent was not an issue because the policy specifically excludes any insured person even if he/she lacks the mental capacity to govern his or her conduct." Id. at 1148 (internal quotations omitted).   As a result, the Court found that the insurer had no duty to indemnify the insured.

Additionally, a pair of cases decided in Georgia clearly demonstrate the effect of the mental capacity provision on the insurer's duty.   In Morgan, cited by Intervenors, the

34

Georgia Supreme Court held that "whether voluntary intoxication may render a person incapable of forming intent ... so as to place his act outside an exclusion in a homeowner's insurance policy" is not properly determined at summary judgment.  368 S.E. 2d at 509.  The policy in that case barred recovery for acts causing bodily injury that was expected or intended, but contained no mental capacity exclusion.  Id. at 511 n. 1.  Years later, the Court of Appeals of Georgia, dealing with precisely the same issue of voluntary intoxication and intent, concluded it was proper to determine that the insurer had no duty to indemnify at summary judgment.  The ruling specifically relied on the addition of the mental capacity exclusion to the insurance policy as the basis for the otherwise contradictory holding to Morgan. Espanol, 601 S.E. 2d at 823-24.

A recent unpublished opinion by Magistrate Judge Trumbull from the Central District of California, Allstate Casualty Insurance Co. v. Griffin, is the only case unearthed by the parties or the Court where it was held for summary judgment purposes there was a question of fact whether coverage of the acts of an insane insured was precluded by a mental capacity exclusion.  2005 WL 2122053 (C.D. Cal. 2005).  In Griffin, the parties stipulated to a joint statement of facts declaring that the insured defendant ("Griffin") was found not guilty of "assault with a deadly weapon and assault by means likely to

cause great bodily injury" by reason of insanity.  Id. at *1.

The court first held that it was a question of fact as to whether Griffin's act was an occurrence. Id. at *3.  In California, "a person is deemed legally insane if he or she is 1) incapable of knowing or understanding the nature and quality of his or her act or 2) incapable of knowing or understanding that his or her act is wrong." Id. at *3 (citing People v. Horn, 158 Cal. App. 3d 1014, 1027, 205 Cal. Rptr. 119 (1984)).  The court reasoned that if Griffin was deemed insane under the first prong of the insanity test, then his conduct may have been accidental. Griffin, 2005 WL 2122053 at *3.  However, if Griffin was found insane because he did not know his act was wrong, then his conduct may have been intentional and thus fall outside the scope of the definition of an "occurrence."  Id.  The court pointed out that the term "accidental" refers to the insured's conduct, not his state of mind.  Id. at *2.

Next, the court considered the intentional and criminal conduct exclusion.  The exclusion barred coverage for "bodily injury or property damage intended by, or which may [] reasonably be expected to result from the intentional or criminal acts or omissions of any insured person." Id. at *4.  The court held that the acquittal by reason of insanity made it clear that the insured's conduct was not criminal and the exclusion did not apply for that reason.

36

The court then evaluated whether Griffin intentionally committed an assault. Id. at *6. Relying upon the same reasoning as in its analysis of whether Griffin's conduct was an "occurrence," the court found that it was a question of fact as to whether Griffin had the requisite intent to attack. Id.[9] However, it does not appear that the Griffin court considered the mental capacity exclusion, which stated that the criminal and intentional act exclusion applies "even if such an insured person lacks the mental capacity to govern his or her conduct." Id. at *4. As other courts have held, including Nakauchi, this mental capacity exclusion makes it unnecessary to determine the insured's intent. 2002 WL 32069127 at *5. Furthermore, since the parties stipulated that Griffin was found not guilty by reason of insanity, there was no factual evidence before the Griffin court as to whether the criminal court had made any findings regarding the elements of the alleged crimes. Here, the criminal court acquitted Mark after finding that the State had proven the elements of Murder in the Second Degree and Sexual Assault in the First Degree beyond a reasonable doubt.

---

[9]   The plaintiff in Griffin (who was also Allstate) argued that Nakauchi v. Allstate, 2002 WL 32069127 at *5 (C.D. Cal. 2002) provided the  proper analysis in cases where the attacker's drug use and/or mental capacity were at issue and the policy contained a mental capacity exclusion. However, the Griffin court determined Nakauchi to be insufficiently analogous because the Nakauchi attacker was convicted of assault, as opposed to being acquitted by reason of insanity.

In accord with the national consensus, the Court concludes that Mark committed an act that was not an accident, and that the mental capacity exclusion renders irrelevant a determination as to whether he acted intentionally.  The Court finds that Mark's act, as described in the Criminal Complaint and Criminal Judgment, is the type of conduct that is barred from coverage by the intentional act exclusion as modified by the mental capacity exclusion.

Intervenors also argue that the Court is bound by Mark's subjective intent in evaluating Allstate's duties because in Hawaii, "[t]he question of what is an accident must be determined by addressing the question from the viewpoint of the insured." Hawaiian Holiday Macadamia Nut Co., Inc. v. Industrial Indemnity Co., 76 Haw. 166, 170 (1994); AIG Hawaii Insurance Company v. Caraang, 74 Haw. 620, 635 (1993).  It is not absolutely clear that Hawaii courts have conclusively determined whether the insured's expectation should be evaluated objectively or subjectively.[10]  However, in concluding that the provisions of

---

[10]   Relying on Caraang and Dairy Road, Intervenors contend that  courts must make a subjective assessment of the insured's perspective.   While the Caraang court examined conduct from the viewpoint or perspective of the insured, it implemented a "reasonable man" standard in assessing the insured's expectation. 74 Haw. at 643.  See also Blanco, 72 Haw. at 19 (concluding that the insured's perspective of whether or not he should have anticipated that the wife of the man he shot would suffer emotional injury should be judged by a reasonable man standard); State Farm Fire & Casualty Co. v. Gorospe, 106 F. Supp. 2d 1028, 1032 (D. Haw.

**(cont.)**

the underlying Policy in this case, specifically the mental capacity exclusion, render unnecessary a determination of the insured's intent, the Court need not reach this precise question of state law.  The Court holds that the Policy does not cover the Tadeos' assault claim against Mark as alleged in Count 1 and Allstate has no duty to indemnify Mark on that claim.

> 2. <u>Count 2 - "Infliction of Emotional Distress" and Count 3 - "Wrongful Death"</u>

A determination that Count 1 - "Assault" of the underlying civil complaint is not covered by the Policy does not in itself establish a complete release of Plaintiff's duty to indemnify.  The underlying civil complaint also alleges that Mark is liable for damages to the Tadeos for Count II - "Infliction of Emotional Distress" and Count III - "Wrongful Death."  In support of these claims, the Tadeos realleged the facts in support of the assault claim, but provided no additional facts other than to describe their loss and suffering.

In Hawaii, an insurer has no duty to defend or indemnify an insured if the additional claims brought against the

---

2000) (where the court evaluated the insured's perspective from a reasonable man's position); <u>but see</u> <u>Northern Insurance Co. of New York v. Hirakawa</u>, 68 Fed. Appx. 835, 836 (9th Cir. 2003) (appearing to endorse a subjective analysis of the insured's perspective in ruling that there may have been a duty to defend if the act was not intentional from the perspective of the alleged "psychotic" insured in a case without an operative mental capacity exclusion).  The Court does not rely on the foregoing unpublished opinion as precedent pursuant to U.S. Ct. of App. 9th Cir. Rule 36-3, although the Court does find the opinion to be illustrative.

insured are based solely on an assault that is not covered by a policy.  In Bayudan v. Tradewind Insurance Co., Ltd., 87 Haw. 379, 381 (Haw. Ct. App. 1998), an insured defendant in an underlying state claim filed a declaratory judgment action in federal court seeking a declaration that his insurer must defend and indemnify him in the state action.  In the underlying state court action, the injured plaintiff ("Lapina") alleged that the insured defendant ("Bayudan") kidnapped and sexually assaulted her, after Bayudan pled no contest in a criminal proceeding.  Id. at 381.  Lapina, who had been renting a room in Bayudan's home, sued Bayudan for intentional and tortious assault and kidnapping, breach of a duty to provide a safe place, breach of an express or implied warranty that the residence was safe, intentional and/or negligent failure to warn Lapina of Bayudan's pattern of kidnapping and assault, and intentional and/or negligent infliction of emotional distress.  Id. at 386.

　　Bayudan sought declaratory judgment after he tendered his defense to his insurer but it refused, alleging that the claims did not rise out of an "occurrence" as defined by his insurance policy.  Id. at 381.  The court concluded, and Bayudan admitted, that Lapina's first count for assault and kidnapping was based on an intentional act and did not fall within the policy's definition of an occurrence.  Id. at 385.  The court then examined the remaining claims and concluded that Lapina had

pled no additional facts to support any of the additional claims. Id. at 387.   Therefore, the court concluded that merely recasting the same facts that support the intentional tort to support additional negligence claims does not raise a potential for coverage.   Id. (citing Colorado Farm Bureau Mutual Insurance Co. v. Snowbarger, 934 P.2d 909, 911 (Colo. App. 1997)(denying an insured's claim that the insurer had a duty to defend when the underlying state complaint only stated facts supporting intentional sexual assault and not negligence)); see also Allstate Insurance Co. v. Kim, 121 F. Supp. 2d 1301, 1306 (D. Haw. 2000) (holding that the insurer owed no duty to defend when the underlying complaint only alleged intentional and criminal acts); State Farm Mutual Automobile Insurance Co. v. Pichay, 834 F. Supp. 329, 333 (D. Haw. 1993) (finding that an intentional act precluded insurer's duty to indemnify or defend).

As stated above, there are no additional facts pled in support of the Tadeos' other claims against Mark other than those pled to support the assault claim.   Therefore, the Court finds that the additional claims of infliction of emotional distress and wrongful death do not obligate Allstate to defend Mark.

Additional evidence from the police report, Mark's deposition, and Ellen Davis' Answers to Interrogatories does not alter any of the Court's above conclusions regarding the limits of the Policy that were based upon the underlying civil

41

complaint, criminal complaint, and criminal judgment.[11]

The Court concludes that the assault of Kau'ilani was not an accident and the mental capacity provision of the Policy renders a determination of Mark's mental capacity to form intent unnecessary.  Based on the foregoing analysis, the Court finds that Plaintiff has no duty to indemnify Mark in the underlying State Court Action.

C.   No Duty To Defend Mark At Present Time

While the Court has held that Allstate had a duty to defend Mark at the time the defense was tendered, that duty no longer survives after the Court's determination that Allstate has no duty to indemnify Mark.  See Dairy Road, 92 Haw. at 423 (citing Liberty Mutual Insurance Co. v. Superior Court, 58 Cal. App. 4th 617, 68 Cal. Rptr. 2d 219, 223 (1997).  The duty to defend only lasts as long as there is a possibility that a duty to indemnify exists.  Id.  The Court's ruling forecloses that possibility.  See discussion supra Part II.B.  Therefore, the Court concludes that Allstate had a duty to defend Mark as

---

[11]  In Mark's Deposition, he testified that he has no recollection of Kau'ilani, whether he was accused of killing her, or even being arrested.  (Supplement to Intervenors' Opposition at 27:19-28:14).  Other evidence of drug use, physical and sexual abuse  may be relevant to Mark's state of mind but are not relevant here because his mental capacity does not effect Plaintiff's duties.  Ellen Davis stated that she had no personal knowledge of the incident but someone told her that Kau'ilani was "hit with a blunt object and raped." (Ellen Pearl Davis' Answers to Interrogatories 4 & 9).

of the date of tender, on or about March 9, 2004, which
terminates as of the date of the entry of this Order.

D.   No Duty To Defend And/Or Indemnify Mr. And Mrs. Davis

On March 11, 2005, Default was entered by the Clerk
against Defendants in this case.  (August 24, 2005 Order at 13).
The Court concluded that the Defendants never appeared in this
action nor did they make an attempt to set aside the default
against them.  Id.  As a result, the Court entered default
judgment against Mr. and Mrs. Davis in Plaintiff's declaratory
judgment action.

To this day, Mr. and Mrs. Davis have not made an
appearance in this matter, and only Intervenors allege that
Allstate should continue to defend and ultimately cover damages
for any judgment against Mr. and Mrs. Davis.  In the absence of
any appearance, the entry of default judgment against Mr. and
Mrs. Davis stands.  However, the Court will consider Allstate's
obligations to the Davis' at this time because of the potential
impact of this decision on Intervenors' interests in the
underlying State Court Action.

Even if the Court were to set aside the default
judgment against the Davis' for equitable reasons, the Court
still finds that Allstate has no duty to defend or indemnify Mr.
and Mrs. Davis for allegations made against them in connection
with the assault of Kau'ilani by their son, Mark.

43

In the underlying civil complaint, the Tadeos have alleged that Mr. and Mrs. Davis are liable for Count IV - "Parental Liability" pursuant to H.R.S. § 577-3[12] and Count V - "Negligent Supervision."  In support of Count V, the Tadeos allege that the Davis' "did negligently and/or recklessly supervise Defendant Mark Davis, Jr.."  (Motion CSF, Ex. 2 ¶ 25). The complaint realleges the previous facts in support of the claims against Mark, but no additional facts are pled to support either allegation.

In Allstate v. Kim, this Court concluded that an insurer had no duty to defend or indemnify the parents in an underlying state case against allegations of negligent supervision.  121 F. Supp. 2d at 1302.[13]  Relying on extensive judicial support, the Court held that when the language of the exclusionary clause unambiguously excluded coverage for their son's acts, the plaintiff had no duty to defend and/or indemnify the parents.  Id. at 1308-09 (citing Employers Mutual Co. v.

---

[12]  H.R.S. § 577-3 states in pertinent part: "[t]he father and mother of unmarried minor children shall jointly and severally be liable in damages for tortious acts committed by their children, and shall be jointly and severally entitled to prosecute and defend all actions in which the children or their individual property may be concerned."

[13]  Specifically, the civil action alleged that the parents "negligently failed to properly discipline their son or to obtain medical and/or psychological assistance for him and ratified and consented to their son's wrongful conduct."  Kim, 121 F. Supp. 2d at 1301.

G.D., 894 F.2d 409, 1990 WL 4854 (9th Cir. 1990); Carbone v.
General Accident Insurance Co., 937 F. Supp. 413 (E.D. Pa. 1996);
Caroff v. Farmers Insurance Co. of Wa., 98 Wash. App. 565, 989
P.2d 1233, 1237 (1999); Johnson v. Allstate Insurance Co., 687
A.2d 642, 644-45 (Me. 1997); American Family Mutual Insurance Co.
v. Copeland-Williams, 941 S.W. 2d 625, 629-30 (Mo. App. 1997)).
Similarly, the Court concludes that allegations of negligent
conduct and parental liability against Mark's parents are
insufficient to support a duty to defend or indemnify because the
claims arise directly from Mark's act that is not covered by the
Policy.

         Despite the consensus supporting this proposition in
cases where parents are sued for the actions of their children,
Intervenors have offered one Hawaii state case to contradict the
general rule.  Intervenors claim that the Hawaii Supreme Court's
decision in Caraang, 74 Haw. at 642, which held the insurer had
the duty to defend and indemnify one insured from whom's
perspective the incident was an accident, but not another insured
who acted intentionally, is applicable.  Id.  As a result, they
argue that even if the Court finds no duty for Allstate to defend
and/or indemnify Mark because of the Policy exclusions, it must
still defend and potentially indemnify the Davis' because the
incident was an accident from their perspectives.  However, there
is a critical distinction in the language of the exclusionary

policy in Caraang and the case at hand that make such an analogy improper.

In Caraang, the family of a man killed by a gunshot while driving his own vehicle sued two men, the driver and passenger of another car, claiming they were liable for the injuries to the decedent. Id. at 625. It is undisputed that the passenger was the shooter, and that the driver was unaware that the passenger had a gun until the weapon was fired. Id. at 633. The defendant driver drove a truck owned by his parents. Id. at 624. The insurance company that issued the automobile insurance policy covering the vehicle sued for declaratory judgment to determine its duties. Id. at 623. The Court ultimately concluded that the insurer had a duty to defend and/or indemnify the driver because the incident was an accident from his perspective, but not the passenger because the incident was intentional from his perspective.

However, there is an apparent distinction between the exclusion clause in Caraang and the exclusion clause in the present case. The exclusionary language of the Caraang policy denied liability coverage to "*any person* who intentionally causes bodily injury...." Id. at 624 (emphasis added). So, only the person who committed the intentional act is excluded from coverage. Here, the exclusionary clause denies liability coverage when "any bodily injury ... intended by, or which may

46

reasonably be expected to result from the intentional or criminal acts ... of, *any insured person*." Motion CSF, Ex. 1 at 27 (emphasis added). This Policy universally denies coverage for all claims arising from any incident falling under that exclusion regardless of whether the insured seeking coverage is the same insured that committed the act. As has been established, Mark, an insured person, caused the injury in a manner that is not covered by the Policy. Thus, the holding in <u>Caraang</u> does not apply to this case. As a result, Allstate need not defend and/or indemnify any other insured person who may be liable as a result of Mark's conduct.

For the foregoing reasons, the Court concludes that even if it were to set aside the default judgment against Mr. and Mrs. Davis, Allstate has no duty to defend and/or indemnify them against the claims brought by the Tadeos in state court.

## CONCLUSION

For the foregoing reasons, the Court GRANTS

Plaintiff's Motion for Summary Judgment.


IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 28, 2006.




_____
Alan C. Kay
Sr. United States District Judge


ALLSTATE INSURANCE COMPANY v. DAVIS, Civ. No. 04-00418 ACK/BMK,
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.